H. F. REED, APPELLANT, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLEE.

FILED MARCH 20, 1909. No. 15,578.

1. Pleading: CONSTRUCTION. In an action against a railroad company, plaintiff alleged the purchase and possession of a mileage ticket, the possession of a freight train permit, and that defendant, disregarding its duties as a common carrier of passengers, wrongfully ejected him from a caboose attached to one of its freight trains, but did not allege any contract to carry him as a passenger or any breach thereof. *Held* to state a cause of action *ex delicto* and not *ex contractu*.

2. Carriers: REGULATIONS. Railroad companies may properly designate on what trains passengers may be carried and may exclude passengers from unscheduled extra freight trains.

3. ———: LICENSE: REVOCATION. A permit issued by a railroad company without consideration, which authorized its train operatives to carry the holder of the permit on freight trains, is a mere license and may be revoked at any time when the holder is not actually a passenger under it.

APPEAL from the district court for Nuckolls county: LESLIE G. HURD, JUDGE. *Affirmed.*

*W. A. Bergstresser,* for appellant.

*James E. Kelby, Halleck F. Rose, Frank E. Bishop* and *Fred M. Deweese, contra.*

GOOD, C.

In this action, which was for the recovery of damages alleged to have been sustained in consequence of defendant's breach of duty as a common carrier of passengers, the defendant had judgment on an instructed verdict, and plaintiff has appealed.

Plaintiff alleged in his petition that on September 17, 1905, at Sterling, Colorado, while he was a passenger on one of defendant's regular freight trains bound for Holdrege, Nebraska, the defendant, disregarding its duty as a common carrier of passengers, unlawfully and with force and violence ejected and expelled him from the cars of said train and refused him permission to further ride therein, and that he at the time tendered the conductor in charge of said train a mileage ticket and freight train permit. Defendant in its answer alleged that plaintiff sought to be carried on an extra freight train not running as a scheduled train; that before said train started plaintiff was notified that it did not carry passengers and that he could not ride thereon, and that he abided by said notice, and denied the other allegations of the petition.

The evidence discloses that plaintiff, while at Sterling, Colorado, on Sunday, the 17th day of September, 1905, desired to go to Holdrege, Nebraska; that there were no regular trains leaving until the afternoon of the same day; that plaintiff was informed that an extra freight train was being made up in defendant's yards to go to Holdrege, Nebraska, and that plaintiff might ride thereon. He thereupon went to the yards of the defendant and to the way car of the train that was then being made up, and was informed by the conductor that the train was an extra, and did not carry passengers, and that he could not ride thereon. Plaintiff replied that he had a mileage ticket and a freight train permit, and insisted that he was entitled to ride upon the train. When the train was made up the conductor went to the train despatcher for his running orders, and there saw the train-

master, and reported to him plaintiff's desire to ride upon the train, and was by the trainmaster informed that no passengers could be carried upon that train. The conductor returned to the way car and found plaintiff therein, and informed him of the statement made by the trainmaster, and that he could not ride on that train. Plaintiff refused to leave the car. Thereupon the conductor and brakeman took plaintiff by the arms and led him out of the car. The evidence discloses that plaintiff at the time was the possessor of a mileage ticket, a considerable portion of which was unused, and that he had in his possession a freight train permit. It is conceded that plaintiff received no injury to his person or to his baggage, and that the train was an unscheduled "extra freight."

Plaintiff contends that the action is *ex contractu* and a breach of the contract was proved, and that he was in any event entitled to recover nominal damages, and that it was therefore error to direct a verdict for the defendant. Plaintiff alleges the ownership of the mileage ticket and freight train permit and his expulsion from the train, but does not allege any contract to carry nor any breach of the contract, but does allege a breach of the defendant's duty arising out of its calling as a common carrier of passengers. The question presented is fairly disposed of in *Fremont, E. & M. V. R. Co. v. Hagblad*, 72 Neb. 773. In the opinion in that case it is said: "The petition alleges that the plaintiff purchased a ticket. While it is true that a railroad ticket is evidence of a contract between the carrier and the purchaser thereof, still the plea that the plaintiff purchased a ticket for a passage from Norfolk to Meadow Grove, without alleging that the defendant agreed to carry him between these points in consideration of the sum paid, and alleging further a breach of the contract, does not set forth an action *ex contractu*, 15 Ency. Pl. & Pr., p. 1125, and notes. 'There is a class of cases arising out of contract, where, by reason of the contract, the law raises a duty,

for the breach of which duty an action on the case may be maintained; and in such cases the contract, being the basis and gravamen of the suit, must be alleged and proved. * * * But when the gist of the action is a breach of duty and not of contract, and the contract is not alleged as the cause of action, and when, from the facts alleged, the law raises the duty by reason of the calling of the defendant—as in cases of innkeepers and common carriers—and the breach of duty is solely counted upon, the rules applying to actions *ex delicto* determine the rights of the parties.' *Frink v. Potter,* 17 Ill. 406. See, also, *Wright v. Geer,* 6 Vt. 151; *Bank of Orange v. Brown,* 3 Wend. (N. Y.) 158; *M'Call v. Forsyth,* 4 Watts and Serg. (Pa.) 179. We conclude therefore that the gist of this action under the allegations of the petition is a breach of duty arising from the obligations imposed by law upon common carriers, and that it is not an action upon the contract of carriage.". Under the ruling in the opinion just quoted from, the action is clearly *ex delicto*, and plaintiff was not entitled to recover on the theory that his action was for a breach of contract.

It is clear that plaintiff must recover, if at all, for a breach of defendant's duty as a common carrier of passengers, and to maintain his action it was incumbent upon him to prove that the relation of passenger and common carrier of passengers existed, and, if he has failed to prove this relation or to offer evidence from which it might be inferred, he cannot recover. The train on which plaintiff sought passage was not a regular train and was not scheduled, but is what is commonly known as an extra freight, and on which passengers were not generally carried. This fact was known to plaintiff before he sought passage on it. It is generally recognized that a railroad company may make and enforce reasonable rules with reference to carrying passengers on freight trains, and that it may properly exclude passengers from certain of its freight trains. Railroad companies may properly designate on what trains passengers may ride,

and, generally speaking, persons seeking passage have not the right to elect for themselves what train they may ride on. *Burlington & M. R. R. Co. v. Rose*, 11 Neb. 177; *Chicago, B. & Q. R. Co. v. Mann*, 78 Neb. 541; *Roberts v. Smith*, 5 Ariz. 368, 52 Pac. 1120. There can be no doubt of the propriety of railroad companies refusing to carry passengers on certain of their freight trains, and, under some circumstances, consideration of public policy would require them to refuse to carry passengers, as, for instance, where the trains were carrying large quantities of highly inflammable or explosive substances which might render the lives and limbs of passengers extremely hazardous.

It was proper for the defendant to refuse to carry passengers generally on the extra freight train on which plaintiff sought passage, but he appears to contend that because he held a freight train permit he was entitled to ride on any of the defendant's freight trains. The permit is in the following form: "Chicago, Burlington & Quincy Ry. Co. Lines west of the Missouri River. Freight Train Permit. Conductors, Freight Trains: 1905. When presented with regular transportation this will be your authority to carry Mr. H. F. Reed, representing R. Hershel Mfg. Co., between all stations at points where your train stops for other business. This permit is subject to conditions printed on back, which must be signed in ink by the person named, but does not authorize agents to flag freight trains. Good until December 31, 1905. When countersigned by G. W. Loomis or J. Hodge. (Signed) G. W. Holdrege, General Manager. No. 2926. Countersigned: J. Hodge. 1905. Nontransferable. This permit is granted at the special request of, and accepted by, the undersigned, upon the following conditions, it being understood that greater danger attaches to riding on a freight train than on a passenger train: I hereby agree to assume all risk of accident to my person and loss or damage to my personal effects, and also to board and alight from freight trains only at points where such trains may be stopped for

the convenience of the railway company. It is understood that freight trains do not as a rule start from or stop at stations with the caboose or coach at the station platform. Baggage will only be accepted for transportation, under check, on freight trains when there is room in the ordinary equipment of such trains, when baggage may be loaded or unloaded from or to platform without requiring special stop, and when passenger with proper ticket travels on same train. (Signed) H. F. Reed. (Sign in ink here.)" This permit was not issued at the time of the purchase of the mileage ticket, nor was any consideration paid for it. It could have no more efficacy than a pass issued without consideration. It was not a valid contract, but was a mere license, which might be revoked by the company at any time when the holder was not actually a passenger under it. *New York & N. H. R. Co. v. Ketchum,* 27 Conn. 170; *Turner v. Richmond & D. R. Co.,* 70 N. Car. 1.

In the instant case plaintiff was denied permission to ride upon the train before he entered it. This amounted to a revocation of the freight train permit, at least for the one passage sought. He was a mere trespasser when he entered the caboose after having been refused passage on the train, and the defendant and its employees were authorized to use such reasonable force as was necessary to eject plaintiff from the train. It is conceded that they did no more than take him by the arm or coat sleeve and lead him quietly from the train. Plaintiff does not contend in his evidence that he received any injury other than loss of time and humiliation of being ejected from the train. The relation of passenger and carrier of passengers did not exist at the time plaintiff was ejected from the car. Defendant did not owe to plaintiff that high duty which the law imposes upon carriers of passengers and could not therefore be liable for a breach of that duty.

It follows that the judgment of the district court is right, and we recommend that it be affirmed.

DUFFIE, EPPERSON and CALKINS, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.