## FT. SMITH & W. R. CO. v. FORD.

No. 2058.   Opinion Filed September 12, 1912.

(126 Pac. 745.)

1. **TORTS—Tort or Contract—Duty of Common Carrier.** A petition stating a contract of carriage and charging an injury consequent upon a violation of a duty owing plaintiff, in an action against a common carrier, states a cause of action sounding in tort rather than contract, although it alleges an express contract as an inducement; the gist of the action being defendant's breach of a public duty.

2. **SAME — Action by Passenger—Pleading—Contract of Carriage.** When the action against a carrier for damages, brought by a passenger, sounds in tort, the allegation of the contract of carriage is regarded as a mere inducement to the action, to show the right to sue as a passenger.

3. **CARRIERS—Breach of Duty—Torts.** As a general rule, where a passenger is entitled to damages for a breach of the carrier's duty, the remedy is in tort; the wrong done the passenger and the violation of the public duty being the gravamen of the action.

4. **SAME—Action by Passenger.** The character of an action as to whether it is ex delicto or ex contractu must be determined by the nature of the grievance, rather than the form of the petition, and, in a suit against a common carrier for a breach of duty in failing to put a passenger off at the proper station, the courts are inclined to consider the action as founded in tort, unless a special contract very clearly appears to be made the gravamen of the complaint.

5. **DAMAGES—Injury to Passengers—Exemplary Damages.** To authorize a judgment for exemplary damages, in an action sounding in tort, the proof must show some element of fraud, malice, or oppression.   The act which constitutes the cause of action must be actuated by or accompanied with some evil intent, or must be the result of such gross negligence—such disregard of another's right—as is deemed equivalent to such intent.

6. **CARRIERS—Failure to Stop at Station—Damages.** In the running of trains, it is the duty of a carrier of passengers to discharge passengers aboard trains at the regularly appointed place or station, and, for a failure or neglect so to do, it is liable to

the party aggrieved for all damages sustained, and for costs, and, where the necessary elements exist, for punitive or exemplary damages.

7.    **SAME—Liability in Tort.** Where the point of destination of a passenger on a railroad train is a flag station, to which the carrier sold him a ticket, and his presence on the train is known to the conductor, the carrier is charged by law with the duty of stopping the train at such station and affording a reasonable opportunity to the passenger to get off; and a failure to perform such duty is not only a breach of contract, but a tort for which an action is maintainable.

(Syllabus by Sharp, C.)

*Error from Le Flore County Court;*
*James L. Hale, Judge.*

Action by A. J. Ford against the Ft. Smith & Western Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*C. E. & H. P. Warner,* for plaintiff in error.

*J. Wesley Smith,* for defendant in error.

Opinion by SHARP, C.   Defendant in error, plaintiff below, recovered judgment in the county court of Le Flore county against the plaintiff in error, defendant below, for damages occasioned by the negligence of defendant in carrying the plaintiff, who was a passenger on one of its trains, through a station to which he had purchased a ticket on defendant company's line of railroad. The verdict was for $75.   Nine specifications of error are assigned by the plaintiff in error, but two of which are discussed in the brief.   The first is that, the action being one for a breach of contract, there was no proof that plaintiff sustained any damages; the second, that the verdict of the jury was excessive. The petition in part charges that on the 7th day of February, 1910, plaintiff was a passenger on one of defendant's regular passenger trains, having purchased a ticket and paid for transportation from Spiro to Skullyville, and that while on said train the employees of defendant company took up plaintiff's ticket; and further charged that it was the duty of said company to stop its train at the said station of Skullyville, to permit the plaintiff to alight therefrom, but that, disregarding its duty in that re-

spect, defendant company failed and refused to stop its train at said station, and willfully and wrongfully carried plaintiff by and past his said destination.

Section 1379, Comp. Laws 1909, provides that, in case of a neglect or refusal of a railroad company to discharge or deliver passengers at the regularly appointed place, the offending company shall pay the party aggrieved all damages which shall be sustained thereby, with costs of action.   This is but declaratory of the duty of carriers of passengers that existed at common law. It is clear that, upon a failure to discharge its duty by affording an opportunity for the passenger to alight at his destination, there was such a violation of duty as would entitle plaintiff to recover at least nominal damages.   Plaintiff in error admits its liability for nominal damages, but upon the ground of a breach of contract to transport defendant in error to his destination.   If the action, therefore, is one predicated upon contract, the only damages recoverable would be such as would afford full compensation for the injury, if any, sustained by plaintiff, and, there being no testimony tending to show that plaintiff sustained any actual damages, the verdict of the jury would therefore be without evidence to support it.   It is therefore necessary to consider whether the action is one arising *ex contractu* or *ex delicto*.

In our system of pleading the formal distinction between actions is abolished, and the petition should state facts constituting the cause of action, plainly and distinctly.   In determining the character of the action, we look to the substance of the entire pleading, and not to the mere formal language in which it is expressed.   We have regard to the facts constituting the cause of complaint, and afford the plaintiff the most ample redress which the facts will justify, consistent with the rights of the defendant. It is the policy of our system to trammel the rights of the parties, as lightly as possible by technicalities of mere form, but so to shape pleadings as to bring before the court or jury the matter in issue between the parties.   Hence, when the facts are plainly and distinctly stated, the action will be regarded as either in tort or contract, having regard, first, to the character of the remedy such facts indicate; and, second, to the most complete and ample re-

dress which upon the facts stated the law affords. The character of the action is to be determined by the nature of the grievance rather than the form of the petition, and in cases of the character at hand, courts are inclined to consider it is as founded in tort, unless a special contract very clearly appears to have been made the gravamen and object of the complaint in the petition. The case before us presents, under these views, the inquiry whether the petition seeks to recover for a breach of the contract stated therein, or whether the wrong and injury complained of was that the plaintiff, after acquiring by contract the right to travel on defendant's train to a certain station, and to there be afforded a reasonable opportunity to alight from said train at the station at his point of destination, was wrongfully carried by said station by the negligence of the railroad company, and in violation of its public duty.

The contract is stated as an inducement to the action, as the foundation of plaintiff's right to be on the train, to show that plaintiff was lawfully there. It next charges that without the consent of plaintiff the railroad company willfully and wrongfully, and with disregard of its duty to plaintiff, failed and refused to stop its train at Skullyville station, and carried plaintiff beyond his destination to a point about one mile distant therefrom. There is testimony to show that plaintiff requested the employees in charge of said train to back it to the station, but that they refused so to do. Here is not only a breach of contract and a violation of public duty by the plaintiff in error as a common carrier, but a willful, deliberate, conscious wrong.

The question here presented is ably discussed in *Canady v. United Rys. Co. of St. Louis,* 134 Mo. App. 282, 114 S. W. 88, where many authorities are collected. It was there said:

"In view of the fact that the relation of passenger and carrier can arise only through contract, express or implied, it would indeed be difficult to state a cause of action without some reference to the contract out of which the relation arose. And so it is, when the action sounds in tort, the allegation of the contract of carriage is regarded as mere inducement to the action to show the plaintiff's right to sue as a passenger. Therefore, in cases of this class, where the plaintiff alleges the payment of his fare, the promise of the company to carry him, and then proceeds to state

the tort, and his claim is for damages arising on account thereof, the action is declared to be one in tort. This for the reason the gravamen or gist of the action proceeds *ex delicto* on the breach of the duty owing to the public imposed by law. *Denver, etc., Ry. Co. v. Cloud,* 6 Colo. App. 445, 40 Pac. 779; *Head v. Georgia, etc., Ry. Co.,* 79 Ga. 358, 7 S. E. 217, 11 Am. St. Rep. 434; *Ames v. Union Ry. Co.,* 117 Mass. 541, 19 Am. Rep. 426; *Hammond v. Railway Co.,* 6 S. C. 130, 137, 24 Am. Rep. 467; *Brown v. Railway Co.,* 54 Wis. 342, 347, 11 N. W. 356, 911, 41 Am. Rep. 41; 15 Ency. Pl. & Pr. 1124."

See, also, *Reed v. Chicago, B. & Q. Ry. Co.,* 84 Neb. 8, 120 N. W. 442; *Book v. Chicago, B. & Q. Ry. Co.,* 75 Mo. App. 604; *P. C. C. & St. L. Ry. Co. v. Reynolds,* 55 Ohio St. 370, 45 N. E. 712, 60 Am. St. Rep. 706; *Central Railroad Co. v. Roberts,* 91 Ga. 513, 18 S. E. 315; *Heirn v. McCaughan et ux.,* 32 Miss. 17, 66 Am. Dec. 588; *Purcell v. Richmond & D. R. Co.,* 108 N. C. 414, 12 S. E. 954, 12 L. R. A. 113.

It is patent that the action was one based, not upon the breach of a contract of carriage, but, as charged in the petition, upon a disregard of duty arising out of the relations of the parties, and was therefore one sounding in tort. As a general rule in such cases, it may be said that exemplary, punitive, or vindictive damages will not be awarded unless there is proof going to show a wrongful purpose or reckless indifference to consequences, oppression, insult, rudeness, caprice, willfullness, or other causes of aggravation in the act or omission causing the injury, or because the circumstances showed a reckless indifference to duty. *Atchison, T. & S. F. Ry. Co. v. Chamberlain,* 4 Okla. 542, 46 Pac. 499; *Western Union Telegraph Co. v. Reeves, ante,* 126 Pac. 216.

What evidence, therefore, was there tending to bring the case within this rule? That the train on which the plaintiff was a passenger did not stop at Skullyville stands admitted. There were three other passengers on the train who had tickets to Skullyville. The conductor had taken up the plaintiff's ticket before reaching Skullyville, hence knew of his presence on the train. No excuse why the train failed to stop at Skullyville was given. The train slowed down and let off three of the passengers near a mile past the station, and, upon discovery that plaintiff was still

aboard, the train slowed down a second time. There was a sharp conflict in the testimony as to whether the train stopped on these two occasions; several witnesses testifying that it did not, while defendant's witnesses testified that it did. Plaintiff testified that he jumped off the train while in motion, and fell on his hands and knees, though he was not injured; that it was near ten o'clock at night, in the month of February, and was raining at the time. Plaintiff's testimony in part is as follows:

"I asked him to move me back up to the station, and he said, 'He had been there once and was not going any more.' He says, 'Do you want off,' and I says, 'Yes; I have business to attend to tomorrow, I am not well, and I want off.' We slowed up again. We had kept going on until we got to Rain Prairie. It is a very rough place. I was acquainted with the place, so I went down on the step and he went along with me. He says, 'Get off,' and it had slowed up reasonably slow. I am getting old. I am 52 years old, not a real old man, but I have lost my eyesight. It was dark and rainy."

The plaintiff then attempted to follow an old cow trail, but missed it, and then followed a wire fence for a guide a distance of a half mile to a neighbor's, when he again followed another wire fence until he reached home. It appears that the conductor's time was occupied largely with taking up fares and counting tickets. He was civil in his treatment of the plaintiff, more than can be said of the brakeman, who appears to have had active charge in assisting the various Skullyville passengers to alight. The conductor explained that, even though he had been requested, he could not have backed the train up to the station, on account of the fact that he was being followed by a Kansas City Southern train, using the same track. Witnesses for plaintiff, however, testified that the train had preceded the train of defendant company out of Spiro. The train had but two coaches, and no sufficient reason was shown or attempted why it did not stop at Skullyville. The brakeman testified that there was something wrong with the signal cord, and that the engineer did not get the signal to stop, but it further appears that he had no trouble in stopping the train (as claimed by him) twice after it had passed the station to let off different passengers. The conductor testified

that it was the brakeman's duty to assist passengers in getting off in safety. The witness Casey testified that the brakeman told him, "I don't know where in hell he is" (referring to plaintiff), and, when asked why he did not put back to this station, he replied, "To hell with the station. I've passed it, fall off!" This conversation was had with other passengers alike affected, a few moments before the train slowed up the first time.

The neglect and indifference of the conductor and the contempt and disdain exhibited by the brakeman on the occasion tended to show a reckless disregard of duty and indifference to consequences. Where negligence is accompanied with contempt of the plaintiff's rights and conveniences, exemplary damages may be awarded. There is a difference between an injury which is the mere result of such negligence as amounts to little more than an accident, and an injury, willful and negligent, which is accompanied by an expression of insolence. *Memphis & C. R. Co. v. Whitfield,* 44 Miss. 466, 7 Am. Rep. 699, and authorities cited. While the testimony does not show the case to be one of a particularly aggravated nature, and while it does not appear that any lasting injury or loss was sustained, yet the high duty imposed by law upon the defendant, taken in connection with the seemingly willful disregard of plaintiff's rights, in view of the facts established, makes it clear that the verdict of the jury was warranted. In such cases it is the province of the jury to award exemplary or punitive damages. *International & G. N. Ry. Co. v. Terry,* 62 Tex. 380, 50 Am. Rep. 529; *Book v. Chicago, B. & Q. Ry. Co.,* 85 Mo. App. 76; *Id.,* 75 Mo. App. 604; *Cable v. Southern Ry. Co.,* 122 N. C. 892, 29 S. E. 377; *Hutchinson v. Southern Ry. Co.,* 140 N. C. 123, 52 S. E. 263, 6 Ann. Cas. 22; *Memphis & C. Ry. Co. v. Whitfield,* 44 Miss. 466, 7 Am. Rep. 699; *Illinois Central Ry. Co. v. Chambers,* 71 Ill. 519; *Heirn v. McCaughan et ux.,* 32 Miss. 17, 66 Am. Dec. 588; *Dave v. Morgan's La. & T. R. Co.,* 47 La. Ann. 576, 17 South. 128.

Nor does the fact that Skullyville was a flag station affect the rule. It is as much the duty of a carrier of passengers to afford a passenger an opportunity to alight at such a station and to which it has sold him a ticket as at the station at which stops

are regularly scheduled, unless some controlling exigency is shown to have prevented such opportunity. *Chattanooga R. & C. R. Co. v. Lyon*, 89 Ga. 16, 15 S. E. 24, 15 L. R. A. 857, 32 Am. St. Rep. 72; Fetter on Carriers of Passengers, sec. 300; *Strange v. Mo. Pac. Ry. Co.*, 61 Mo. App. 586; *Caldwell v. Richmond & D. R. Co.*, 89 Ga. 550, 15 S. E. 678.

The testimony considered, the verdict is not excessive, but, on the contrary, is 'exceedingly reasonable.

Other errors assigned in the brief, but which are not discussed, are deemed to have been waived, and for that reason have not been considered.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.